Ms. Powell for the Petitioner, Michael T. Flynn, Mr. Wall for the U.S. Department of Justice, Ms. Wilkinson for the Respondent, the Honorable Emmett G. Sullivan. Good morning, Counsel. We'll hear first from Ms. Powell. Good morning. May it please the Court, this is Sidney Powell for Petitioner, Michael Flynn. We are here now to stop further impermissible intrusion into the sole power of the Executive Branch under the Take Care Clause to decide to dismiss a case and what circumstances warrant that dismissal. The government here provided an extensive and thoroughly documented motion to dismiss this prosecution, weighing as it should all the factors that go into that, including the provision of extraordinary exculpatory evidence that came to light through an independent review by Mr. Jensen, who not only had 10 years' experience as an FBI agent, but 10 years as a federal prosecutor before Attorney General Barr tasked him to review this case. It cannot go on any longer. This is the quintessential case for mandamus because we have both issues of judicial usurpation of executive prerogatives and a clear abuse of discretion. The judge has no authority to do anything further in the case. There's no case or controversy any longer. The parties have decided, the government has quit, and he also has no authority to go into the reasons behind the executive's determination to dismiss the case. This is Judge Wilkins. Good morning. Good morning. I have a question about the role of the district court. You essentially argue that the district court has no role, but in Rinaldi, where the Supreme Court was reviewing the denial of a Rule 48 motion made by the government, the court did what it called an independent evaluation of the unusual circumstances disclosed by the record. So the Supreme Court believed that it had a role to perform an independent evaluation. So doesn't the district court here have that same role? Not in the circumstances of this case. The authorities are that given the fact the presumption of regularity applies to everything the Attorney General has done, and there is no clear evidence whatsoever to go behind that given the documentation, reasoning, and briefing that has been provided. There is nothing further for the court to do. There's no indication, there's no clear evidence, there's no actual factor or reason to go behind the government's determination. I don't see how that works, because the court also said in Rinaldi that it would not presume bad faith by the government. So the court gave the government the benefit of the presumption of regularity, but it yet and still performed an independent evaluation. Only to the extent the court said it was not clearly contrary to the manifest public interest. There was no further proceeding of any significance, certainly no amicus appointed, certainly no factual background investigation in Rinaldi. It was simply a review of the petite policy and its application to the facts of Rinaldi. In Fokker Services, this court issued the mandamus, of course, to make sure the deferred prosecution agreement was entered. In doing so, it said the leave of court authority gives no power to the district court to deny a prosecutor's Rule 48A motion to dismiss charges based on disagreement with the prosecutor's exercise of charging authority. Let's suppose the district court had issued a minute order saying that it intends to do an independent evaluation of the record and will issue an opinion on the government's 48A motion in due course. Is that error? I think that is error. He can look at it on the face of the documents that have been filed, but I don't think in Rinaldi that they went farther than the government's statements of what it was doing and why it was doing it. Only the executive can weigh the willingness of the government to prosecute, and there would be no remedy. The court can't make the government prosecute this case. Well, in Thompson, another Supreme Court case that was cited by at least the government in their briefing, I can't remember if he cited it in yours also, the Supreme Court was reviewing the denial of a Rule 48A motion by the government, and it said that it performed, quote, an independent examination of the record, close quote. And that was despite the Solicitor General's suggestion that the court just simply dismiss the case. Do you disagree that that's what the court said that it did in Thompson? No, but I think all that means is reviewing the documents that the government provided and the existing status of the record before it, not investigating new possibilities or assuming the role of the prosecutor to see about adding on perjury or contempt charges. He simply doesn't have the authority to do that, and without a case in controversy, he's without jurisdiction to do anything further. Your mandamus petition is you are – the rulings under review are the failure of the court, the district court, to grant the motion, so you believe that just him not granting the motion is sufficient grounds in and of itself to justify mandamus, right? Well, in Faulkner, the court also said that the court's withholding of approval would amount to a substantial and unwarranted intrusion on the executive branch's fundamental prerogatives, and the judiciary's lack of competence to review the prosecution's initiation and dismissal of charges according to weight equally applies to the DPA decision, so either way – So you believe that Faulkner, a case that was not even a Rule 48a case, undermines what the Supreme Court did in Rinaldi and Thompson when the Supreme Court itself performed an independent evaluation of the record when there was no argument there that there was any bad faith by the government or that the presumption of regularity didn't apply? Do you think that Faulkner said that the Supreme Court got it wrong in Rinaldi and Thompson? No, I'm saying that the independent review of the record consists of just that – a review of the record. It's just that the judge can't – he doesn't have the authority to point an amicus under the Smith case that Justice Ginsburg just wrote the unanimous decision for. He can't go out and create new issues. Of course he can look at the materials before him, and we welcome him doing that, but to go ahead and grant the motion because there's no other alternative – not a single case in the country has ever affirmed the denial of a motion to dismiss under 48a. Then it seems like you've got a pretty good argument that you have an alternative avenue of review. If he denies the motion, then you can come back here on appeal, and you can cite all those precedents to our court, and we can decide that issue at that time. But he doesn't have the authority now to go beyond the record and do anything except that. We would simply be delaying the inevitable and going through an inordinate process in the process of doing that. We just got dumped on a 72-page brief that we have to answer by Wednesday with 500 pages of exhibits. Everybody else in this case is being paid by the government except my client's defense team. The toll it takes on a defendant to go through this is absolutely enormous, and it's not justified by this case. This is the most impressive motion to dismiss I've ever seen in decades of practice and the most well-documented. In fact, in Judge Leon, I think it was a two-page motion to dismiss, pursuant to which he dismissed three defendants for the government after guilty pleas just a couple of years ago. Of course, in the United States, the government dismissed, and Judge Posner wrote that decision explaining how the special prosecutor's position had to be vacated and the motion to dismiss had to be granted on mandamus. Ms. Powell, let me ask you. This is Judge Henderson. If Judge Sullivan had just kept this motion waiting and languishing, it'd be one thing. He has set a hearing for mid-July. For all we know, by the end of July, he will have granted the motion. But he doesn't have the authority to conduct that hearing, Your Honor. He has appointed this amicus to go far beyond the scope of his authority as a member of the judicial branch into the prerogatives of the Department of Justice. I realize that, but you also know that the courts have said he's not merely a rubber stamp either, so there's nothing wrong with him holding a hearing as far as I know. I don't know of any authority that says he can't hold a hearing before he takes action. Well, the only authority that – their best case is in Ray Richards, in which the Third Circuit, on a motion to dismiss a sexual misconduct claim against someone in the Virgin Islands in a territorial court, said we've got to have a little sunlight on the reasons here because the only reason given was in the interest of justice. And certainly that's not sufficient. But even that case, it was actually altered by the court's decision in – or discussed by the court's decision in HSBC Bank, the case out of Mr. Gleason's court that reversed his overreaching authority on reviewing a 48-day dismissal. And that HSBC case describes Richards as requiring a 48-day dismissal because the district court's authority severely cabined the review to clearly contrary to the public interest, meaning the prosecutor acting in bad faith, such as bribery, fecklessness, animus to the victim, or his own self-interest, things like that. If Judge Sullivan had denied the motion to dismiss on this record, we would be entitled to mandamus right now. To drag this out another six months – I mean, it won't just be a hearing on July 16th. It'll go beyond that. I think it's clear from the amicus position now that they want to take General Flynn to sentencing as soon as possible and impose upon him the maximum possible sentence. And to make us go through that process when the ultimate result has to be the grant of the motion to dismiss, the government's just wasting resources out the wazoo pursuing this. And the toll it's taking on the defendant is certainly irreparable harm. I'd like to ask you – go ahead. Let me ask one last question and ask, why couldn't we hold this in abeyance and let's see what happens on July 16th? Because the damage continues to accrue by the day, because he has no case or controversy before him and no jurisdiction, because he doesn't have the authority to go do what he's trying to do or has done. He didn't even have the authority to appoint the amicus under Joseph Ginsburg's decision. I don't understand that argument. I mean, suppose in a run-of-the-mill criminal case – well, it's not run-of-the-mill because the government has evidence from a drone camera that was positioned to look through upstairs bedroom windows into the defendant's home. And the defendant moves to suppress. And AMICI, including the Cato Institute and other organizations, seek to participate as friends of the court in support of that motion to dismiss. You're saying that a district court wouldn't have authority to grant those motions? No, I'm saying that he doesn't have authority to appoint an amicus to do the job that the government would have done if the government chose to continue the prosecution. So the court can appoint an amicus on the motion, but the court can't do it on its own motion? No, I'm saying that the court cannot substitute its role for that of the government. It can't take the place of the attorney general or appoint someone to take the place of the attorney general. That's precisely what Judge Posner rejected in Wray United States. He can't go outside his lane to appoint somebody to do the job that the government would have done. The amicus appointed him to present arguments in opposition to the government's motion to dismiss. That's all that it says in that paragraph. So how is that violating Article 2 to appoint someone to present arguments in opposition? Because the government had already made the decision to stop, and the government is the only entity that can make that decision. The Department of Justice is the only entity that can decide whether to pursue this prosecution. The judge has no way of doing that on his own through amicus or a special prosecutor or anything else. The government has quit, and it's time to leave the field. Ms. Powell, what about appointing amicus for the contempt charges? The Supreme Court in the Young case said that the court can't appoint a private party to prosecute contempt charges. Do your arguments with respect to the appointment of the amicus apply also to the contempt charges? Yes. As our amicus pointed out, and we did also in our brief, contempt doesn't lie for perjury in these circumstances. There are 500 people in the National Database of Registry of Exonerations who would otherwise be susceptible to perjury prosecutions because they entered guilty pleas, but they were actually innocent. Ms. Powell, that goes to the merits about whether contempt could actually be found, but what about the appointment of the amicus to look into contempt charges? There's no basis to do that either. He doesn't have the authority to prosecute anyone for contempt. That's not the judge's place to add on charges. That is solely within the prerogatives of the Department of Justice. Is that inconsistent with the Supreme Court decision in Young? I don't see that inconsistency. In Young, the court said that the district court can appoint a private party to prosecute contempt charges. Well, in the circumstances of this case, contempt cannot lie by virtue of him having moved to withdraw his guilty plea. Let me ask you one other question about the contempt charges. If we decide that reassignment here is not appropriate, would we have any grounds for reaching the contempt question? I don't believe Mr. Flynn petitioned for or asked for mandamus on the contempt question itself. Is there any grounds we would have for being able to reach that question? Simply the fact that the judge doesn't have the authority to do it, and there's no continuing case or controversy. Can I ask a question about the continuing case or controversy point? In Thompson, the 1980 Supreme Court case that I referred to earlier that was cited in the briefs, the Solicitor General suggested to the Supreme Court that the case be dismissed under Rule 48A. The Supreme Court did not itself dismiss the case, and the Supreme Court did not declare that there was no longer a case for controversy. Instead, the Supreme Court remanded the case to the Court of Appeals for reconsideration in light of the government's present position. In that case, the Supreme Court did not treat the fact that the government had filed a Rule 48A motion as ending the case so that there was no longer a case for controversy. Don't you agree? If I recall that case correctly, it was a mandamus for a mandamus, and what the Supreme Court decided was that the appellate court needed to address an additional issue. That is not our situation. With the fact that not a single court in the country has ever refused to affirm a 48A motion, there's no basis to proceed with this case. The Department of Justice is the only entity under Article II, Section 3 that can prosecute the case, and they have decided not to do this for a number of reasons, not the least of which is the appalling suppression of exculpatory evidence that's gone on for as long as three years. The fact that the FBI agents literally made up statements to put in a 302. The fact that Mr. Priestap had a discussion with Andrew McCabe about trying to get the defendant to lie and what is our goal here, and came back the next day reconsidering the fact that they had decided not to show him the evidence that they had like they do with everybody else. The fact they decided not to even give him a 1001 mention, not even a warning, of course. No warning, but not even to mention 1001. They sent agents over there, according to Mr. Comey's testimony, just told him a couple of agents were going to drop by. Was that okay? And he said, of course, sure. He works with them all the time. I mean, this is an appalling injustice. It's a travesty of justice that this man has been dragged through this for three years on a case that was absolutely concocted by FBI agents with some help from the Department of Justice and evidence falsified and everything else. The government has provided extraordinary documentation, and the only thing left to do is for the judge to order the dismissal of this case. The judge can't do an independent evaluation of the record before entering that dismissal? No, he can look at the record, but the only thing to do as a result of that is to order this dismissal because of the presumption of regularity that attaches and the fact there's no clear evidence of anything else. He can't make up these things he calls reasonable, plausible questions that don't even relate to the motion to dismiss and proceed to drag this out forever. It's just not – I mean, it's contradictory to Fokker Services. It's contradictory to Bernaldi. It's contradictory to the NRA United States and the Fourth Circuit in Smith and the Fifth Circuit in Ham. Where in the orders under review did the district court say anything about reasonable, plausible questions? It's in their brief. That's not the order under review, though. The order under review is, from your perspective, is him not granting the motion. That not granting the motion itself is grounds for mandamus. And appointing the amicus to do anything. So we have to find both of those things to be improper to justify amicus? Is that your position, or is any one of them by itself grounds for mandamus? I think either one by itself is grounds for mandamus. They're independent grounds for mandamus. Ms. Powell, let me ask you something about this appointment of amicus. In Fokker Services, we ourselves appointed amicus. Now, if Judge Sullivan had not appointed amicus, would you be telling us that we couldn't appoint amicus? No, ma'am. You can appoint amicus to weigh in on any issue the Court of Appeals wants an amicus to weigh in on, as long as it's an issue within the case and the Court of Appeals didn't create it. What Judge Sullivan has done here is created his own issues that he wants to investigate that aren't related to the motion to dismiss or even the case before him in any way. But in Fokker Services, we appointed someone to defend Judge Leon's order. Well, that's what Ms. Wilkinson is doing here before this Court. She's the analogous piece of that proposition, not Mr. Gleeson. That's true. You have no problem with her, obviously. No, obviously she's entitled to be here on behalf of the judge. Appellate courts often allow amicus participation, but the district court doesn't in criminal cases. There's not even a provision in the rule for that. In fact, if you go try to file a brief as an amicus in the district court, you can't do it properly. All the docket entries had to be corrected. There's no provisions for amicus in criminal cases. I asked you earlier if an amicus could file a brief in support of a motion to suppress. What's your answer? Is there authority for that, yes or no? I would think there's authority for that. Based on what? In support of a motion that another party has filed. If the judge wants to allow it, it would require a leave of court, I would think. Based on what rule? I don't think there's a rule for it, but I do believe that, for instance, there have been amicus in other cases in the district court level, but it's been in support of a position of one of the parties, not in support of a judge trying to gin up additional charges himself. Well, just with respect to the Rule 48A motion, it's your contention that if, for some reason, Mr. Flynn opposed the government's motion, it would be okay for an amicus to enter an appearance to file briefs in support of Mr. Flynn. Well, at least there would still be a case in controversy before the court, and it would be up to the district court whether to allow leave to do that. I don't see a provision in the rules for it, but generally speaking, district courts, I've known, do what they want to do within bounds of reason. So there's authority for it, so long as there's a case or controversy? I'm just trying to understand your legal reasoning here. The legal reasoning is that he essentially appointed Mr. Gleason as a special prosecutor, that he doesn't have the authority to do. If he'd asked Mr. Gleason, for example, to weigh in on a side that existed in the case, that might be permissible. I would probably still argue against it, but I wouldn't have sought a writ of mandamus on it, I don't think. Isn't your argument also that it's impermissible to have amicus briefs in criminal cases under the rules of the court? Yes, that is one of our arguments here, because there is no rule providing for it. But like I said, I've certainly seen it done in other district courts, as long as it's on the side of one of the parties that seeks to continue the litigation, just not on behalf of the judge as an independent prosecutor himself. All right, are there any more questions? Okay, Ms. Powell, we'll give you a couple minutes in reply. Next is Mr. Wall. Thank you, Your Honor. I may appreciate the court. Jeff Wall for the United States. I hope I'll have the opportunity to address a number of the questions that the court has asked as petitioner's counsel, but I want to start with two points. One on the merits to you, Judge Wilkins, and one on harms to you, Judge Henderson. I think, by the way, that's the right order to take them. In recent mandamus cases like Fokker and like Blumenthal, the Emoluments Clause case, the court looked at the merits, asked whether there was a clear and indisputable right on the merits, and then turned to the mandamus factors and harms. I think that makes particular sense here, because if we're clearly right about Fokker, that it doesn't leave an oversight power in the courts or a substantial role with respect to unopposed Rule 48 motions, then I think it's easier to see, Judge Henderson, why it's so harmful to continue to allow this process to play itself out in the district court. Taking the merits first, Judge Wilkins, Rinaldi was a case in which the court assumed, and I think it's clear as in footnote 15, it assumed the broader standard and then said, even that standard can't be satisfied, so the trial court has abused its discretion in denying a motion. A motion, by the way, that came after judgment in that case, not just after a plea or a trial, but after judgment. Thompson, of course, was just a case in which we wanted to pull the prosecution in the Supreme Court, and we asked the court to GBR. And even thereafter, an affirmance in the Court of Appeals, it sent it back to the district court to allow us to do that. But I completely grant Judge Wilkins, neither one of those cases resolves the substantive standard for Rule 48. They resolve that Rule 48 applies contra respondent's assertion all the way on direct review. There's no magical line at the plea, but they don't resolve the substantive standard. The case that does that, and the case that we rely on for mandamus here, is this court's decision in Fokker. That's the decision that resolves the substantive standard for the denial of a Rule 48 motion. How does it resolve that when the case was not an appeal of a Rule 48a motion? Because what Chief Judge Srinivasan did in discussing the DPA was he explained how DPAs and Rule 48 motions are analogous, and he separated off approval of a plea agreement under Rule 11. And that analogy was central to the court's reasoning. In order for the court to say that district court erred in a way that justified mandamus, he said the error is so clear because look at what has to be the rule under Rule 48, and then that has to be the rule for DPAs as well. So I understand Parts 2a and 2b of the opinion in Fokker to be central to the judgment and to what it goes on to do when it applies that standard later in the opinion. And I think the language of Fokker when it goes through that discussion leaves no doubt. It says dismissing charges, not just convincing, but dismissing. Is it squarely within the can of prosecutorial discretion? It says there's no oversight power in the courts, no involvement by the judiciary, and it says no substantial role for courts. And if we're right about what Fokker says with respect to Rule 48, then to turn to my point to you, Judge Henderson, then it's really a question of what are the point of further proceedings if the district court is required by circuit case law to grant the Rule 48 motion. Do you believe that Fokker stands for the proposition that the district court can't perform an independent evaluation of the record? I think it does in the following sense, Judge Wilkins. I understand Fokker to mean that if tomorrow, faced with the kind of tolling agreement that was at issue in Fokker, I'm going to set up a process for deciding whether to grant this agreement. I'll hear from both sides. There are a number of factual questions I'm going to have to resolve about whether he's going too easy on particular descendants, and the district court did all of that. I understand that to be, yes, a straightforward violation of Fokker. And, again, it's not just the sort of idea that there will be some briefs and hearing, Judge Henderson. The harm is that, as the respondent explained, both in the opening brief and page two of the reply, the point of this is to investigate, they say, the prosecutorial decisions and prosecutorial motives. Those are respondent's words. The order itself says that, which is under review, says that amicus is appointed to present arguments in opposition to the government's motion to dismiss. That's the order under review. It doesn't say anything about fact development or anything else. So, with all respect, Judge Wilkins, two points. First, we're not here on appeal from an order. We are here, as you know, on mandamus, and mandamus is an extraordinary writ that directs the district court to do something. It's not necessarily a review of an order, and here we're asking that the district court be directed to grant the Rule 48 motion. But, second, beyond the order, the reason for entering the order, as respondent's briefs in this court have explained, so we now know what's going to go on below, respondent wants to inquire into what they say are prosecutorial decisions and prosecutorial motives, because the district court is concerned that there was improper influence here, and, indeed, both the district court and the court appointed amicus have, on the one hand, suggested, and with respect to the amicus, flat out alleged that there was misconduct on the part of the Attorney General and even the President of the United States. That's going to mean that we are, in the district court's view, going to have to come in and answer those questions and defend against them, and that's all of the systemic costs that this court laid out in Part 2A of FOCR. So, in order to have this sort of anodyne proceeding that some of these questions are assuming, this court would have to issue mandamus. You'd have to take off the table evidentiary proceedings and the like. You'd have to take off the table contempt. You'd have to say just the Rule 48 motion. You address that with dispatch, and then you could come back to this court. But at that point, if that's the proceeding, there's no reason not to have it. The district court doesn't even have the authority to appoint amicus to advise it on whether it should issue an order to show cause for contempt? So, Judge Wilkins, we, unlike the petitioner, we have not argued that district courts generally lack the power to appoint amicus. I think either under the rules or more likely under their inherent authority. But what we have said is that the particular amicus here is improper for all the same reasons that appointing amicus and going through an elaborate process would be improper in the DPA context under FOCR. And if that's true, then a fortiori it's got to be true for the Rule 48 context, which was the basis for FOCR's reasoning with respect to DPAs. So we're not saying that the district courts don't have the power to do this generally. What we're saying is that here, that there are problems with this particular appointment of the amicus. And just to get back to your question, Judge Henderson, I think once we know that those are the harms, there's no reason not to take that final step because we know the harms that are going to play out. This has already become, and I think is only becoming more of, a public spectacle, particularly in light of the amicus filing in the district court two days ago. And I really, it threatens to harm not just the integrity of the executive and its prosecutorial discretion and its deliberative processes, but I think, frankly, it threatens to do harm to the judiciary as well. Mr. Walsh, if I could just ask you, I mean, the court has, you know, our court has repeatedly declined to grant mandators when the government addresses abstract separation of powers violations such as in Al-Nashiri. So I'm just wondering if you can be more specific and more particular about what the concrete separation of powers violation is here. I mean, Rule 48 does allow leave of court, right? So is the problem, like, what precisely is the problem here? What precisely is the infringement under Article II power? I think, Judge Rao, that the separation of powers harms here, you're right, they can be very subtle and very abstract in a lot of cases. I think they are as stark and as concrete here as they come. Because here we know from what's transpired below and from the brief in this court that what the district court is contemplating is a sort of intrusive, fact-intensive inquiry into what they say are a host of factual questions. Why did particular prosecutors not sign the brief? Why did the attorney general make this decision? Was he right on these various grounds? What about the uncharged conduct with respect to the Turkey statements? We're going to have to brief and apparently put on evidence in defense of all of that so that the district court can then reach a decision when circuit law compels them to grant motion. And I think that it is an intrusive process and it is going to harm the executive and we can't ignore that it is playing out in a politicized environment that I think is made worse by the kind of, honestly, the sort of 70-page almost polemic that the court appointed amicus file, which alleges that the president and the attorney general have engaged in grave misconduct. So when you're looking at those kinds of allegations, you're forcing us to descend against them all in a context where this court's case law says that's exactly what courts shouldn't be doing. It says, quote, no substantial role, end quote. It's hard for me to see a much clearer... But all of the 48A opinions from every court has said that the court has some role in that the role involves making sure that there's not something that's being done clearly contrary to the public interest. So then there must be some case where or some set of circumstances where as unfortunate as the clash of the two branches of government might be, where Rule 48A does some work. Isn't that right? Judge Wilkes, I think it is right in the following sense. 48A does work in cases where it's an opposed motion. And even where it's an unopposed motion, we don't dispute that the court can ascertain that it's got the considered decisions of the parties. You don't have a prosecutor who's been bribed or a defendant who hasn't been counseled about the dismissal. But we do say that for unopposed motions to dismiss, relatively small set of applications under 48A, that where the parties agree and they are both making considered decisions, yes, the court is required to grant in light of the constitutional concerns that this court discussed in Fokker. And the second thing I'd say, Judge Wilkes, just to drive this home is, I understand respondents who accept that everything I just said is right in the pre-plea situation. They agree that if the defendant hadn't pleaded and this was just an ongoing prosecution, we could pull this back, there'd be nothing a court could do about it, couldn't force us to go to trial, and a court, even if it were upset about our motives, couldn't perform any oversight. It would need to grant the motion. And so the move that they make, and it's the key to the merits, at page 19 of the reply is to say, okay, but Fokker is just for the pre-plea situation. It doesn't apply once the court has accepted the plea. And I think that's got to be wrong for no fewer than four reasons. First, once we know that it's not the concern of the rule in most of the cases, which are the pre-plea cases, then we know it's not really what the rule cares about. Second, the constitutional concerns are exactly the same after the plea. We no longer want to proceed as the executive and there's no longer a controversy between the parties. Third, we know, as you said from Rinaldi, the U.S. can dismiss even after judgment, even after trial, let alone after a plea. So there's no magical plea line. And fourth, Fokker rejected exactly this distinction. It said accepting the plea agreement to be sure is a judicial act. That calls on the court's authority. But just dismissing, that it said doesn't. That's just letting a case go in deference to the executive's exercise of prosecutorial discretion. And once you know that that plea line, there's nothing magical about that in terms of Rule 48 for the Constitution, then I think their case on the merits collapses. And then we're just back to Judge Henderson's question about the harms and why Grant Mandamus, why Grant Mandamus now. But Fokker made clear that there are different considerations at different stages of a criminal case to the extent that you, even if we credit that Fokker is binding on Rule 48A. And here we have two different district judges that as a part of their obligations under Rule 11 made factual findings as to materiality and the basis for a plea, et cetera. And so the government's motion doesn't just implicate the government's position. It implicates those rulings that two district court judges have made. So the case isn't in the same posture as it would be prior to a plea agreement in that respect. I absolutely agree with part of that, Judge Wilkins. It is certainly true that there are different concerns at different stages. And Fokker says accepting the plea agreement does call on the court's authority because it has to ascertain whether there's a factual basis for the plea. But it contrasts that with dismissal. And to the part I disagree with is that once you've crossed that plea line and a defendant has pleaded, that suddenly everything that follows invokes the court's authority in some way that changes the calculus because Fokker says that's not true. And the best example I think is in the United States in the Seventh Circuit. The district court wasn't just a plea. It was a sentence. And in light of the sentence, the government wanted to dismiss some of the charges because it no longer wanted to proceed with them. And the district court was upset about that. It wouldn't allow the government to dismiss. And the Seventh Circuit said, look, it doesn't matter even if the government's trying to get around the district court's sentencing authority. It's the master of its own case. It gets to decide when to bring or when to dismiss charges. So I agree that a Rule 11 acceptance of a plea agreement, if that's what we're before the court, that's different. But this, and Fokker's language is crystal clear about this. It says accepting DPAs and dismissing under Rule 48, it says, quote, are not formal judicial action imposing or adopting, end quote, terms on defendants or parties. They're not the court formally signing off on anything. When Judge Sullivan grants this Rule 48 motion as he's required to, he's not taking back anything he's done before. He's not expressing any opinion on the government's case. He's not saying he agrees or disagrees. He's just acknowledging a co-equal branches exercise of its core executive power. I have a question about your position, the United States position, about its representations in support of a Rule 48. Is it your position that the government does not have to state all of its reasons in support of dismissing the case, only those that it chooses to share with the court? It is, Judge Wilkins, but I don't think anything turns on it here that you need to agree with me on that. I think we could have come in and just moved to dismiss without providing an explanation to district court. We do that at times, and district courts routinely grant them. No appellate court's ever reversed in a situation like that. But here, we did. We went beyond what we thought we were obligated to do under the circumstances. We provided a robust explanation to the district court, and we think whatever Rule 48 might require as a procedural matter, we've more than cleared that hurdle, as Ms. Powell said. I think this is one of the most robust Rule 48 motions you will find. So to, I guess, understand my concerns, suppose you have a case where a federal law enforcement officer is pleaded guilty to a criminal civil rights violation for using excessive force, and then the government says that they've uncovered some Brady evidence and are moving to dismiss under 48A after the guilty plea. But part of the reasoning of the authorities was that, as to why they didn't believe they'd be able to prove this case beyond the reasonable doubt, was that the defendant is black, I'm sorry, the victim is black, the defendant law enforcement officer is white, and they did not believe that the jury would believe the black victim over the white officer without corroborating evidence. And that's unfortunate, but that's the reality. And so that was one of their reasons for dismissing. But they thought that that wouldn't play well, so they didn't say that in the motion. They just said that the exculpatory evidence was the reason they're dismissing. Is that proper? So two points, Judge Wilkins. One is legal and one is practical. The legal one is that there's an easy way to deal with that here, given the mandamus posture. I think Fokker is clear that the government, as long as it provides no reason, any reason at all, and it's not an unconstitutional reason, can dismiss. So yes, I think that that motion there should be granted, but the easy way to deal with that in the mandamus posture is to say, look, even if you think that there's room for some kind of a Richard-like rule, or we think there's a... It's not clear and indisputable. I'm sorry. I couldn't hear about 10 seconds of that. Could you repeat whatever you said? Neither did I. Sure. I'm sorry, Judge Wilkins. If you thought that it wasn't clear under Fokker whether the court could allow that type of explanation, you could try to leave that open and just say, look, whatever that might be on the merits, it's clear and indisputable that wherever the bar is, the government met it here through its fulsome explanation. And the practical thing I'd say is I certainly hope that the government hasn't ever filed a motion like that, and I'm not aware of it. But even then, yes, I think the court should have to grant it, because the government, whatever its motive, no longer wants to proceed. But what you would see is you'd see other defendants walking in, attaching that motion, and bringing on strong claims, saying the government is making racially-based decisions in its prosecution. And based on your hypo, it sounds like they'd have pretty good grounds for that. So I think there are remedies for this other than needing to contort Rule 48 to get into what the executive's motives are. If there's remedies for it, there can't be a remedy for it unless you know that it's happening. And if the government doesn't have to disclose all of its reasons, then you never know that it's happening, right? And if the district court isn't allowed to ask whether there were any other reasons, you'd never know that it's happening, right? But that would be equally true in a case like Fokker, Judge Wilkins. I mean, the district court can always say, look, I think the U.S. attorney has cut a sweetheart deal with the corporate defendants here. And so I want to get some briefing, and I want some argument and hearing on whether there was improper influence brought to bear on this. And the point of Fokker is that it isn't to the courts to police whether the executive has pure or impure motives. The remedies for those occur in political and public arenas. Retaliation from the other branches, dismissal of corrupt executive officials, even impeachment if it comes to it. But Rule 48, Fokker says, is not the mechanism for policing the kind of harms that you're worried about. And if a court could do the sort of thing you're talking about, then I think Fokker has to be a dead letter. Because either with respect to Rule 48 or a DPA, a court concerned about the executive's motives could always inquire. And I understand that inquiry to be exactly what Fokker shut off. So, Mr. Wall, are you suggesting, I mean, normally the standard is that there is a presumption of regularity. What about the case in which a district court feels that that presumption is overcome on the face of the material presented by the government? So, two points, Judge Rao. First, I don't think that presumption is relevant here. And to put it to you this way, if a district court thought that the government had a bad faith motive for declining to bring a prosecution, I think that everyone agrees that the court couldn't force the U.S. to bring the case. And the same is true for maintaining a prosecution. As Fokker says, there's no oversight rule for the courts. And when it refers, this is the key thing, Judge Rao, when it refers to the presumption of regularity, it's not saying there's some exception to the rule it's laying down in that situation. If you look at that passage of the opinion, all it's doing is listing that as another reason for adopting its rule. Even with respect to constitutional claims, the courts are very loathe to second guess in the absence of clear evidence of unconstitutional motive. And so it gives that as a reason for reading Rule 48 its way. It's not adopting some exception to its reading of the rule. But even if it were, we'd still be entitled to mandamus. Because Armstrong is completely clear, Judge Rao, that you have to have clear evidence of an unconstitutional motive to rebut the presumption. And they can argue back and forth about whether they think the Attorney General is right about this or about that. But there's nothing here that remotely approaches clear evidence of an unconstitutional motive. That's what you need to rebut the presumption, even if it were relevant. So irregularity, in your view, would only be an impermissible motive? There are not other types of irregularity? That's right, because it's only an unconstitutional motive that would allow the court to step in. That you need an independent constitutional limit, like a racially based prosecution. So yes, if a district court thought that a U.S. attorney were favoring his friend, that would be terrible conduct. There are political remedies for that. But there aren't judicial remedies under Rule 48. If the considered decision of the executive branch, whatever its motive, is that it no longer wishes to proceed, it doesn't have to bring the case. And by the way, whatever its motive, there's no longer an Article III case of controversy. So even if the prosecutor was dismissing the case because it did not believe that a white police officer should have to answer for using excessive force on a black defendant, and they say that in their pleading under Rule 48A, the district court still has to grant the motion. Judge Wilkins, I don't think that the court can force the executive to keep that case alive in the absence of a case of controversy. As I tried to say earlier, it may well be a basis for dismissing other prosecutions. But even if you disagree with me on that, the reason your hypothetical has force is because it's an unconstitutional motive. It's the kind of thing that could qualify for Armstrong. And you can bracket that question off if you think that Focker isn't as categorical as I do. Because there's nothing like that here. And I don't think you can leverage that, Judge Wilkins, to say, well, if we can inquire… What does leave of court mean, then? What work at all does leave of court do, then? Well, it does work, of course, with respect to opposed motions to dismiss. And the work that it does for the far smaller set of unopposed motions in a situation like this is it allows the court to make sure that it's a considered decision of the executive. You don't have a prosecutor who's been bribed. And it's the considered position of the defendant. The defendant hasn't been poorly counseled. Imagine a situation where a defendant agrees to a dismissal without prejudice, even when the government has repeatedly been bringing charges and then dismissing them on the eve of trial. I think certainly a district court is warranted in asking the defendant, are you sure about this? Because it sure seems like the government keeps yanking your chain. So why isn't it the case that if the government makes a considered but racist decision, that it just does not want to have a white officer stand trial for excessive force on a black victim, that the district court can deny the motion? And then the political chips can fall where they may, and perhaps under pressure from the public or Congress or whatever, the district court may not be able itself to force the government to prosecute the case. But maybe through the operation of the legislative branch or other pressures from the public and the media, a new prosecutor is appointed and the case proceeds. Why isn't that exactly what leave of court should operate to do? Judge Wilkins, your question I think recognizes the answer, which is, as you say, there's no power to make the executive move forward to trial, which I think goes to show why this isn't the concern of Rule 48. But if the government can't make the case go away, and the case is in limbo, then while it's in limbo, pressure could be brought to bear on the government to reconsider its decision, right? Let me say two more things, Judge Wilkins. First, I think as Judge Kavanaugh explained in Aiken, the remedy for that kind of an equal protection violation is to dismiss other cases. It's not to compel the government to move forward with this prosecution. Second, even if you disagree with the reasoning of Aiken, if you had that kind of a case where the prosecutor put forward on its face in the motion evidence, clear evidence under Armstrong of an unconstitutional motive, I think you could bracket off that case as a constitutional matter. We don't have anything like that here, and just to square the circle, you can't leverage that back, I think, to saying that even if you could inquire in some Armstrong-type case, because the face of the motion disclosed a possible constitutional violation, that then you can inquire in every case. That then would just eat the rule. I think Aiken is right that there are other remedies for the equal protection violation. It's not meant to be taken care of under Rule 48, but you don't have to agree with me on that, because here, no one, I think, is arguing, not even responding, that on the face of the motion to dismiss that the government filed, there's any unconstitutionality. There's any evidence that we violated the equal protection clause or anything like that. Thank you. Mr. Wall, let me ask you, you threw out a question probably 30 minutes ago. What would be the harm in going ahead and mandating the granting of the motion to dismiss? The harm is, to me, anyway, regular order, and mandamus is a drastic remedy. You know that. We all know that. Nobody's been able to find a case in which mandamus has issued where the district court has not acted in the sense of a ruling, an order, something that we can review. Now, this district judge has taken two actions. He's appointed an amicus, and he's set a hearing. Now, unless you agree with Ms. Powell that the setting of a hearing is something that's ultra viris, that leaves the appointment of the amicus. And granted, he may have chosen an intemperate amicus, but that doesn't mean that he is going to deny this motion. And considering the drastic remedy that mandamus is, considering there's no precedent that allows us to move without an order, and considering that there's a hearing been set for July 16th, I don't see why we don't observe regular order and allow him to rule. For all we know, he will say this amicus brief is over the top, the dismissal motion is granted. So, Judge Henderson, a few points. Yes, it's an extraordinary writ. We would say this is an extraordinary case. I think we're well past regular order. I agree with that. I agree it's an extraordinary case. And I think at a minimum, in order to have the sort of regular order you were talking about, the court should still issue a more limited form of mandamus. That takes off the table these evidentiary questions. They want to probe the executive's motives and will have to descend against that. They say in their brief, quote, affidavits and declarations, end quote, and it seems to me that they want some evidentiary discovery process. I think that clearly should be off the table, and contempt should be off the table. If all we're talking about is the meaning of FOCR and Rule 48, and the court's going to decide that at the hearing with dispatch, we can come right back to the circuit. I think at a minimum, you need that in order to get the sort of regular order you're talking about. But then I would say, Judge Henderson, and the reason I think you should go a step further is, it's just not true that even if, as limited, he just denies the, or he grants the Rule 48 motion, it's still not the case that the parties haven't suffered harms. The harms to General Flynn are obvious from the continued prosecution and the threat of contempt, unless this court takes it away. But the harms to the government are really what I'm focused on. You have, as you say, a potentially intemperate amicus. You have all of these allegations being lobbied at the executive branch. We're going to have to answer them in a public forum in a politicized environment. That's exactly the sort of thing that FOCR, when it walks through the harms in Part 2A, says you shouldn't be doing. It invades our deliberative process. It chills law enforcement. It sets up a conflict between the branches, and so I agree with you. We don't know that's going to happen. We have Judge Sullivan, who is an old hand. He's an excellent trial judge, and he may say to himself, at least, you know, I asked for advice, and I'm ignoring it, and I'm granting the motion to dismiss. Shouldn't he be allowed to do that? I think Judge Henderson and the government respects Judge Sullivan, as you say, an experienced judge on the district court. I think because we are past regular order, we have crossed into the mandamus threshold. If we had gone about this a different way, I might agree with you that order ought to be maintained, but because we've reached a point where you have the district court in its brief raising questions about prosecutorial motives, if the court appointed amicus tribunum at home in its brief, the court is apparently contemplating that we'll defend ourselves and lay out exactly why we've done what we've done, all of this playing out against the backdrop of these incredibly harmful allegations, and I think if it isn't already, it is threatening to become and will become the sort of public spectacle that I think mandamus is warranted to foreclose at this point, and I agree with you, Judge Henderson. I wish we weren't here, but we are. Fokker is clear about granting the Rule 48 motion, and so it's why would we have these unnecessary proceedings when they are really going to do damage to the executive branch at this point, given the way they've set up and the environment they're playing out in. But the government didn't file a petition for mandamus. Mr. Flynn did. That's very fair, Judge Wilkins. I don't want to get too much into the government's deliberative process, because of course our whole point is that's not permissible under Rule 48, but what I can say is there was uncertainty in the district court about what the district court was going to do, and on the same day the district court set the briefing schedule before we'd made any final decision, General Flynn filed his mandamus petition, and at that point we had to decide whether to support it or whether to file a duplicative petition that risked slowing this down, and we obviously decided to support the mandamus petition. And I think honestly it would be artificial to cabin off the separation of powers harms here, just because we didn't file our own petition when they're presented in stark relief. And certainly if that were important to the court, it should at least give us the opportunity to file some short mandamus petition that could be consolidated with General Flynn's, because we are here saying there are serious, I mean indeed grave, I think to Judge Ralph's point, stark separation of powers concerns playing themselves out. These are not the sort of subtle abstract things that sometimes present themselves in these Article 2 and Article 3 cases. You have a court that is considering whether to keep alive the process. You're talking about regular order, and then you're saying that, well, we didn't file a mandamus petition, but if that's important, then give us leave here after argument to file one. I mean, that's far from regular order here. And you're arguing that if you're not inclined to grant the principal relief by the people who filed the motion, then grant some form of limited mandamus relief. And you're making that argument even though you don't have a mandamus petition before us. I mean, none of that is regular order counsel. Judge Wilkins, I'll grant that very little about this case is regular order at this point. I don't think that our not filing a mandamus petition can be taken as legally relevant in any way. We are a respondent-supporting petitioner that regularly occurs in courts, including the Supreme Court. We make the full range of arguments, and our legal arguments and our harms are considered by those courts, as I think they should be here. And my only point to Judge Henderson was to get us back to regular order, you'd need at least mandamus that would take off the table of the evidentiary proceedings and questions and contempt. But even if you just narrowed it to the legal question of the meaning of Rule 48, which would mean that most, I mean, the vast bulk of the court-appointed amicus briefs is no longer relevant to the hearing, even then you still ought to take the additional step of granting mandamus. And the case that Judge Henderson and I would point you to are Focker and Inouye United States themselves. Those were questions of first impression, but both this court and the Seventh Circuit said, the constitutional principles are so clear we're going to give mandamus, and here we have not just the constitutional concerns under Article II and Article III, but you have the decision in Focker itself. I keep coming back to in Focker, the district, we knew what the district court did. We don't here. Oh, I agree, and I think it's possible then that if you come up at an earlier stage in Focker, this court wouldn't have granted mandamus. But once it grants mandamus in Focker and explains why it's doing it, and it explains how it reads Rule 48, and it says a dozen different times that there's prosecutorial discretion, courts can't scrutinize, there's no oversight. It's not just imputing the decision of the district court there. It's imputing everything the district court was doing that led up to it, because courts, it says, don't have any substantial role. They have, quote, no oversight power, end quote. And so I don't want you to know that from Focker. And I take the point that, you know, look, this is not briefs and hearings. That's not what this is right now. That is not how this is shaping up in the district court. But even if we were somehow to limit it to a more normal-type proceeding, without all of the stuff that Respondent in its brief says it wants to get into, that's all now squarely foreclosed by Focker. So I understand pre-Focker why it might not have been enough, but it seems to me now it indisputably is. Mr. Wall, I'm concerned about your fallback position that we could grant some kind of partial relief. I mean, wouldn't that require the court to articulate, actually, far more legal standards about what precisely is on and off the table? That seems to be a lot of law to be making in the mandamus posture and seems much less clean than just, you know, issue with a writ of mandamus in full. I'm just wondering whether, I mean, if you really think that this partial mandamus would actually be more minimalist than a clean writ of mandamus. No, Judge Rowe. Let me be very clear about this. The writ of mandamus is warranted here. It is clear and indisputable that the Rule 48 motion has to be granted under Rule 48, and if we're right about that, there is no reason to let these harmful proceedings play themselves out in the district court. So we completely agree that the cleanest way to resolve the case under Focker is to grant the writ. I was just explaining to Judge Henderson that if the court sort of has these concerns about granting the writ, it seems a little bit unfair to the petitioner and the government to say you should observe regular order because nothing about these proceedings threatens to be regular. To put them back on a regular track, you have to grant at least some kind of mandamus, but I completely agree with you that that does require you to say, look, Focker is clear that it doesn't have evidence and it does require you to address the contempt piece. The cleaner way to do it is just to say Focker is clear that the court has to grant the Rule 48 motion, and so, you know, giving the harms to the defendant and the government, the richer issue. And I will fully grant Judge Henderson that it's an extraordinary writ, and we do not ask for it in ordinary cases and in an ordinary dispute between private parties, it wouldn't be appropriate here, but this is a separation of powers case. I mean, if you take a case like Cheney where you just think about discovery, bringing the branches into possible conflict, and the Supreme Court grants mandamus, this case, it seems to me, is two steps beyond that. You have actual conflict between the branches where the court wants to inquire into why we did this in the face of allegations that there was some impropriety, and I understand that to be exactly what Chief Judge Schernervos said in Focker courts may not do, and I really don't think it's hard to see what the harms are going to be to the government over the next couple of months if we and the defendant are put through that process, which is all for naught if at the end of the day the district court is required by law to grant our motion. Well, let's drop the phrase regular order and let's talk about one of the requirements I don't think I've heard anybody mention, and that is the adequate remedy at law. That's what I'm talking about as far as regular order. You grant it assuming you have an indisputable right, and that to me seems pretty clear. You still have to say why there is no adequate remedy at law, and I'm not going to repeat myself, but why is there none if on July 16th Judge Sullivan grants the motion to dismiss? So I'll take one more stab, Judge Henderson, and I think it's this. Even if a month or two from now the court grants our Rule 48 motion, in the meantime you will have a proceeding that's forcing us to explain ourselves, to do it apparently through affidavits, declarations, some kind of an evidentiary process in the district court. I don't know whether, and the district court is very careful in its briefs not to say exactly what it envisions, but the district court has left itself room for not just documents of that kind, but witnesses and all the rest, and that is going to intrude, it's going to, all the harms in Part 2A of FACRA, it's going to intrude on our deliberative process, and I think the court has to take account of the fact that both respondents' briefs and the court opinion in MECAS, they're impugning the motives of the Attorney General of the United States, and it's going to pull the judiciary into a fight that should play out in a public political arena, and I think those are real harms to the executive branch, even if at the end of having been put through that whole process, and what I think threatens to be a spectacle in the district court, the district court ultimately grants the Rule 48 motion, and if we're right, as you started, that FACRA says district courts shouldn't be doing these things, it's hard to imagine a case where a district court would do something foreclosed by FACRA that would be more harmful than what we're facing on the circumstances here. If ever the court were going to say a district court needs to grant the Rule 48 motion, that's what FACRA clearly and indisputably requires. It seems like this would be the classic case. All right, are there any more questions? No. If not, then we'll hear from Ms. Wilkinson. Thank you, Mr. Wall. Thank you, Judge Anderson, and may it please the court. The petition asks this court to grant really an extraordinary remedy for mandamus, to prevent this district court from even considering or questioning a pending motion. This court should deny that petition for three reasons. First, the government's motion, as this court has already pointed out, is still pending, and it may very well be granted. Alternative relief is available below. Second, the law does not clearly and indisputably foreclose the district court's consideration of the government's motion. And third, it would be inappropriate to grant mandamus in a case involving open questions where the government is raising novel constitutional arguments that were not raised below. As this court has said, it is essential for those questions to be raised below to maintain the regular order. No one disputes that a federal district court cannot second-guess a legitimate exercise of procedural discretion simply because it disagrees with it, but that is not the issue before the court. The issue here is whether a federal district court judge can set an expedited briefing schedule and appoint an amicus to provide adversarial briefing before ruling on a motion that requires leave of court. The answer is and must be yes. Judge DeSoto? Yes, Petra. Ms. Wilkinson, yes. So, but I mean, in a case such as this, where both the government and the defendant agree with the motion to dismiss, I mean, isn't the appointment of an amicus creating an Article III case or controversy where there isn't one? No, Your Honor, there is a case in controversy here for several reasons. One, as you know, the government and the defendant are asking for the motion to be dismissed with prejudice. By definition, there cannot be a ruling to dismiss those charges with prejudice if the court doesn't have jurisdiction. And the parties want that, of course, because they don't want another prosecutor to come back and look at these charges and bring those charges against Mr. Flynn. So, everyone in this case agrees that this motion, if it should be granted, should be granted with prejudice so the charges are ended. Well, what happens, though, in a case, maybe another way of asking this, if the district court were to determine that the motion to dismiss should be denied, then what happens? Then we go on to sentencing Mr. Flynn, even though the executive is no longer pressing its prosecution. There's no reason at this point to fear that the district court is going to deny the government's motion to dismiss. But if for some reason the facts or the answers to the questions at the hearing gave some basis for that, I'm sure the parties, including the government this time and Mr. Flynn, would file another motion or another writ for Mandavis. And that happened in Ray Aikens, as you know. And there the court said and denied the first motion or the writ because they said the government hadn't had the chance to act. And in fact, they gave years to the government agency, the NRC, to make that decision. And only when that agency announced that it would not rule did this court issue a writ of Mandavis. So here we're not in any situation similar to that. As Judge Henderson has said, the court only set a briefing schedule and has a hearing for July 16th. The order to the amicus is circumscribed as only presenting arguments in opposition. And there's no suggestion that the court is going to call witnesses or do anything of the parade of horribles that the government and petitioner was laying out for you. All this court is doing is getting advice. And what standard is an Article III judge supposed to apply in this context? In order to assess the motion to dismiss, Rule 48 just says there must be leave of court. But what's the standard that the district court judge must apply? Well, the governing law here is in Amidam, which is still good law, was cited by Falker. And there, as Falker reiterated, I think, we have to look at whether that presumption of regularity or there was a clear violation of the public interest for the court to seriously consider whether it can deny the motion to dismiss. So there is a presumption, as you mentioned earlier. And the question is, is there any basis to overcome that presumption? And that would guide the court's inquiry after receiving the briefing and asking questions of the government and the parties. But, I mean, isn't – I mean, the public interest is not a standard that's mentioned in the rule. And, I mean, in our constitutional system of government, isn't the public interest with respect to whether prosecution goes forward, isn't that public interest one that is committed firmly under Article II to the executive branch and to the politically accountable executive branch, not to an Article III court? Generally, yes, Your Honor. The prosecutorial prerogatives protect and consider the public interest. But in Rinaldi, the Supreme Court specifically held out that standard, I think you know, in footnote 15 where they said they aren't ruling. They are allowing the motion to dismiss be reviewed at the abuse of discretion. And they found that it did abuse discretion. But they said we have not decided whether you could consider a Rule 48 in light of the public interest. And, in fact, the defense led by Justice Rehnquist said he thought it was clearly an independent basis to review a Rule 48 motion. But in any event, that law is not clear here. There's no clear and indisputable standard for this court to issue a writ of mandamus based on the fact that the standard is unclear as to how you determine leave of court and any kind of abuse of discretion or discretion. What we do know is in this court, in this circuit court, in Fokker and Amedown, both provided for a review by the court of the government's motion and allowed for questioning. When you decided the case in Fokker, Judge Leon questioned the parties, including the government, in open court on several occasions. And he had conferences. When Fokker was decided, no one stated in that opinion, you cannot ask questions. You cannot have a hearing. And, in fact, the government never took Judge Leon up on a mandamus. There's no situation in Amedown. The government argues that Fokker necessarily rebuked that approach by the district court. What's your response to that? That's not what Fokker says. What Fokker says is that the district court judge abused his discretion when he denied the motion, which was the speedy trial motion necessary for the deferred prosecution agreement, when he stated that he disagreed with the government's prosecutorial decisions. That, indeed, is an improper basis to deny a motion to dismiss. And that was the circumscribed ruling of Fokker. Fokker does not deal with Rule 48, as you've talked about. But it certainly doesn't say that you can't have consideration or scrutiny. In fact, it says just the opposite throughout the opinion. They talk about scrutiny, and they talk about it being circumscribed. But they certainly don't say the court has no right to ask questions. And here, all the judge is doing is receiving briefing and having a hearing. And the parties, the petitioner and the government, didn't object to that below. They have no alternative. Yes, Sharma? I mean, how does the presumption of regularity then apply in a situation like this? I mean, before asking questions, you know, appointing amicus, doesn't the district court have to determine that the presumption is overcome? No, Your Honor. The court could not determine whether the presumption had been overcome without at least questioning the government about its motion. I think Judge Wilkins was pointing that out when he was saying if you had a pleading and the government didn't include all the facts because they only wanted to present certain facts, the court, by definition, would have to inquire to determine whether that presumption was overcome. The court was clear that there is a presumption. So it is a long hill to climb to overcome that presumption. But there's nothing in Fokker that says you may not question the government. And, in fact, the government answers these kinds of questions all the time. If you look at Rinaldi, then Chief Judge King of the Southern District of Florida's court, called the prosecutors in and asked questions. The Supreme Court in Rinaldi didn't say that kind of questioning was improper. That happens every day in district courts when a party files a motion and a judge asks questions. That's all that's happening here. There's nothing more and nothing less. I mean, there is more here. There's an appointment of an amicus to oppose the motion to dismiss. I mean, that I don't believe is an everyday occurrence. You're absolutely right, Your Honor, because normally parties are opposed. But here in this unusual circumstance where both parties agree, all the district court did was appoint an amicus to present arguments in opposition to the government's motion to dismiss. And we know, because at least some time has passed, that the amicus filed that brief and did not ask for any witnesses, did not request any fact-finding. So, to go to Judge Henderson's point about the regular order, if this court doesn't step into the fray and allows the district court to do its job, it may well be that the court reads both sides, both briefings, asks the government's question, and grants the motion to dismiss. But who is the amicus representing here? I mean, what is the – I mean, you know, where the government decided to draw for prosecution and the defendant agrees, what is the standard that they're arguing? I mean, who are they arguing on behalf of? They're arguing on behalf of the adversarial position, just like this court does often or the Supreme Court does. I mean, one of the most famous cases is Dickerson, where the government was not going to challenge the Miranda standard, and the court appointed an amicus there to argue because the government chose not to take that position. Right, but so what is the – so you're saying that there's some kind of judicial right or judicial power here that the amicus is representing? No, I think – I mean, I think, as Mr. Walsh stated, there's an inherent power, and it occurs at the district court level, not frequently, for the court to appoint an amicus when it needs advice or legal briefing on an issue. But here, it's even more important because there's – you need adversarial briefing. The government and Mr. Flynn are aligned. I know, but so – but that's – in a criminal case, that is the adversarial process. It's the government against a criminal defendant. Who is the – what does it even mean to have an adversary where the government and the defendant agree? Like, what is the – I mean, is it representing some kind of inherent authority of the court? It's representing the authority of the court to understand the opposing arguments. Just like here, Your Honor, you have the government and the petitioner aligned, and the district court was brought in to argue the other side. It doesn't mean that the district court thinks this motion under Rule 48 should be denied. All we're doing coming forward is arguing the other side. And all the district court was doing is appointing an amicus to say, what is the scope of the authority? Can a motion – an unopposed motion under Rule 48 be denied? And if so, what is the standard, as you've just asked me? The standard is not clear. So, what are the outlines? What are the cases? And what do they say about the court's authority to ask questions and to make that decision? Well, then the amicus isn't an adversary. You're not – then you're saying the amicus is to just provide understanding about the law to the district court? I think it's – the amicus is an adversary in the sense that he was directed to take positions opposing the government's motion to dismiss. So, I believe the government and the petitioner would surely see the amicus as an adversary. And that's important because the court doesn't have to listen to the amicus. As Judge Henderson said, the court is an experienced judge. He can ignore the amicus. He can take some of the points under consideration. And then he can ask his questions and make his ruling. But he wanted to hear – yes, Judge? Sorry. I mean, I guess I think here – I mean, as you've also recognized, right? I mean, there is a core Article II power over prosecution. Even the weakest understandings of Article II admit that the executive power, you know, includes control over prosecution. But it's hard. Absolutely. I think you have to articulate here what is the countervailing Article III issue at stake. So, for instance, in the Nixon case, right, there was a conflict between Article II and Article III. And the Article III power there that the court articulated was the district court's essential function in protecting individual liberty in a criminal trial. But here, I think – I guess I'm wondering if you can articulate what is the countervailing Article III power at stake in a case where the government and the defendant agree on the motion to dismiss. Faulkner laid that out by saying the court is allowed to question the presumption of regularity of the prosecutorial decision even when the defendant and the government agree. Amidon says the same thing. And even in Nixon, Your Honor, the court citing the framers made clear that even though you're dividing and allocating the sovereign powers among three co-equal branches, the framers of the Constitution sought to provide comprehensive system, but the separate powers were not intended to operate with absolute independence. And here, you had the government exercising its Article II powers coming in and asking the court to make an independent finding for a plea. It had the court make a legal finding and a factual finding, and as Faulkner says, the court has exercised its coercive power and convicted the defendant. There's a public conviction in lieu of a trial, so the government didn't have to go through that. And that's very important for Article III power that you're stepping into the shoes of the jury and saying, based on this finding, we can adjudicate this defendant guilty. And now the government is coming back and saying, we want you to dismiss those charges and apparently vacate your findings of guilt. It's not clear what they want to do about the actual plea because that's not the subject of this mandamus. The plea agreement that is between the government and the defendant and what the effect of that is if the charges are dismissed. But they're asking the court, the executive branch, to come in and reverse or vacate its findings. And so the court has the right, the duty, and the language under leave of court to ask the government questions. The Rule 48 language that's been in the statute for over 80 years that the Supreme Court suggested and Congress approved, there's not a case since that language went in that says leave of court is meaningless when the parties agree. And that's the government and the petitioner's position. To be clear, they are saying those words mean nothing when the defendant and the government agree. And that makes no sense under all the cases, starting with Rinaldi. It makes no sense in light of all the cases around the country where every panel has at least considered whether the court below abused its discretion when they denied a motion to dismiss. Well, perhaps leave of court may not be a kind of rubber stamp, but leave of court is, those words on its own are also, it's hard I think to fit into leave of court the ability for a court to keep sentencing a person where the executive branch wants to draw the prosecution. I mean, leave of court may not mean that much, even if it means something more than a rubber stamp. It's true, Your Honor, and I think every case has said that it's a circumscribed review, a limited inquiry that a court can do under that standard, but it doesn't say no review. It doesn't say no questions. And the government's position is somehow by the court asking the government questions about the motion that it filed, that somehow there's some irreparable harm. If it is, that goes on in a district court every day of the week. It went on in Fokker. It went on in Amidon. It went on in Rinaldi. The district court in each of those cases asked the prosecutors questions, and they didn't stand up and say, we don't have to answer them. Leave of court means nothing. They answered the questions. They gave the court the information, and the government certainly knows how to refuse to answer or refuse to provide information if it thinks it's appropriate. And this is the reason why this case, all of these issues, should have been brought up with the district court below. If the government did not like the process of the amicus or the briefing or the petitioner didn't, they should have raised it with Judge Sullivan. And instead, they've ended on the district court and come to you. Counsel, the government says that with respect to kind of the case or controversy and the Article 2 prerogatives and how Rule 48a is supposed to work, that even if the government in a motion says, you know, we're moving to dismiss because we don't want to prosecute this white defendant for beating and using excessive force against a black victim, that the court would still be compelled under Rule 48a to grant the motion to dismiss and that the remedy, if any, for that sort of unconstitutional bias would be defendants in other cases filing some sort of Armstrong motion or, I guess, action by other branches after the dismissal to reprimand the executive. What's your response to that point of view of Rule 48a? It won't surprise the court that I strongly disagree with that. The case law that's already well known by this court, starting with Rinaldi and the cases around the country, give examples of where a court can move, can deny a motion, which include bribery. That's not even a constitutional violation. You just heard Mr. Wall mention it a few minutes ago. And all of those cases provide that could be an example where a prosecutor was bribed and likely, if that were true, is not going to put that in the pleading in the motion to dismiss and that could cause a court concern and could be the basis for a motion to dismiss. So if the government was acting in a racist way and either gave those bases to the court or the court was able to uncover them through questioning, yes, that would be a basis to dismiss. The next question is, then what could the court do? It would depend on the posture of the case. If it was an early decision in the case and the defendant actually hadn't pled guilty, then there's more limited options. But as you said, there's still public pressure that can come as a result of the court issuing that motion. But if the defendant has pled guilty, the more difficult question or the more interesting question is, the Article III court now has supervisory power over that defendant. As Falker says, once you have a guilty plea, the court has jurisdiction over sentencing. So the question is if that police officer had pled guilty and the government disagrees with moving to the dismissal and the court denies it, could the court sentence that defendant? I don't know the answer to that question, but there's certainly a basis for the judge to deny the motion to dismiss on those grounds. Thank you. The district court is not acting as a prosecutor, Your Honor, nor has he made up his mind about the pending issues. He is considering the government's motion and receiving briefing from all the parties. After hearing the arguments, Judge Sullivan will do what he is called on to do on a daily basis. He'll decide the motion. With such a combined inquiry, there is no clear and indisputable justification for this court to enter the fray now and stop a federal district court judge from carrying out his Article III responsibilities. Thank you. All right, any more questions? All right, Madam Clerk. Neither counsel has any time left, right? Correct. All right, Ms. Powell, why don't you take two minutes? Your Honor, first, there were no valid Rule 11 proceedings in this case to take the guilty plea. But mainly, the first judge who took it should have recused already. He mysteriously recused a few days later. But for the same reasons that would have existed when he recused seven days later, he should have recused immediately. And the government knew that information, but General Flynn didn't. The second guilty plea colloquy that Judge Sullivan did was not a full colloquy at all. In fact, he ended it by asking repeated questions of the thing. He had many, many, many questions, including about how this was material and how it impeded the government's investigation. All of that is now refuted completely by the extraordinary exculpatory evidence that Mr. Jensen disclosed that has been hidden from the defendant for three years. That's what makes this case different from every other case. When that happened in Stevens, Judge Sullivan had no problem dismissing the case at all. He didn't inquire behind the government's two-page motion to dismiss. They simply produced the evidence and dismissed the case. Why we're making a special exception here for General Flynn is beyond my capacity to understand the law when every case in the country has affirmed a grant of a motion to dismiss and not denied one in any way, shape, or form. I mean, every appellate case in the country has affirmed the grant of a motion to dismiss or has said the case has to be dismissed. They don't have any ability to go question behind the government's perspective on why it made the decision. Absent an Armstrong problem, which clearly doesn't exist here, or clear evidence, not plausible questions, not amusing, not imagining, but clear evidence of some serious wrongdoing that indicates bad faith on the part of the government. And Rinaldi makes clear that the leave of court provision was included to protect the defendant from prosecutorial harassment. There is neither a case or controversy here any longer. The government and the defendant have agreed that the case must be dismissed. The government is not going to carry on the prosecution. It cannot be forced to by an Article III court that's outside its bounds. And the motion for writ of mandamus should be granted on all counts. All right. Thank you, Ms. Powell. Mr. Wall, why don't you take two minutes? Judge Henderson, can you hear me? Yes. Thank you. So, just a couple of very brief points. I didn't hear a respondent address what I think is the central point on the merits, which is that once they've conceded that Fokker does not allow the court to go any further with respect to the pre-plea situation because there's no way to make the executive proceed with the prosecution. And once we know that it's a Rule 48 and a constitutional matter, there's no way to force the government in that situation. They don't have any argument that there is a matter of reading the rule and interpretive principles or constitutional concerns that would distinguish the post-plea situation. That's just not what Rule 48 is meant for. And I think Fokker's clear about that. So, then, really, they've hung their hat on just the notion that it's too early in time. And as I tried to say earlier, I think, Judge Henderson, there are real harms that are going to come from the kinds of questions they want to ask. I mean, in the brief, they say they want to ask about the uncharged conduct. So, not just why we no longer want to maintain this prosecution, but why we haven't brought separate charges against this defendant. Everybody, I thought even respondent, conceded commencement prosecution was off the table, but they want to ask about uncharged conduct. They want to ask about related prosecutions. They want to ask about why certain prosecutors signed particular briefs, whether they agreed with our position, whether they didn't. They want to ask questions on the reasons that the Attorney General gave, like his policy judgment that the federal interest is no longer warranted. And if the court thinks about the manner in which we are going to have to answer those questions in the district court, what we are going to have to say, whether as a factual or as a legal matter, in terms of disclosing our own deliberative processes and the like, I think it's fairly clear why Fokker said courts were not supposed to go down this road. And I take the point that the train isn't at the end of the line, that it's only partially left the station, but I think that's why Fokker said the train's never supposed to leave in the first place, in order to respect the division of constitutional authority between the executive and the judiciary. In light of these Article 2 and Article 3 concerns, like the ones Judge Rao was raising, there are real harms here. And if we know what has to happen at the end of the day, with all respect, the district court should be directed to do it now, rather than have some unnecessary and very harmful further proceedings. Mr. Wall, let me ask you something that is, I think, in your brief, but I don't think you mentioned it this morning. And that is the harm to Article 2, perhaps not harm, but the benefit of self-correction. On this record before us, if there was bad faith, it occurred in the original prosecution. And shouldn't we allow Article 2 to self-correct? Absolutely, Judge Anderson. And I think, and this goes to the question Judge Wilkins was asking earlier, even if we could legally come in and not give any reasons for the motion, we did give fairly fulsome reasons, and the Attorney General had two independent rationales, or sorry, three independent rationales. And although they've challenged two of them on sort of legal basis, no one, not the court opponent amicus and not the respondent, has said a word about the portion of the motion where the Attorney General says that looking at the circumstances surrounding the FBI's interview of General Flynn and the fact the way it went on and the way it wasn't communicated to others at the White House and all the rest, that he concluded that it was no longer in the interest of justice to proceed with the prosecution. Now, the reason they don't say a word about it is because I think no one disputes that that is the kind of judgment that is at the core of Article 2 power. It's difficult to imagine, at least outside the military context, a more core Article 2 judgment. And yes, Judge Anderson, when we put that forward in the motion, whether we were required to or not, absolutely I think that at that point the district court is required to grant the Rule 48 motion. All right, thank you. Do my colleagues have any questions? No. No, that's all. All right. All right, counsel, your case is submitted and Madam Clerk, if you'll adjourn court.
judges: Henderson, Wilkins, Rao